1    **GREENBERG TRAURIG, LLP**
     JEREMY A. MEIER (SBN No. 139849)
2    1201 K Street, Suite 1100
     Sacramento, CA  95814
3    Telephone: (916) 442-1111
     Facsimile: (916) 448-1709
4    meierj@gtlaw.com

5    Attorneys for Defendant

6    CELLCO PARTNERSHIP D/B/A
     VERIZON WIRELESS

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11

12   CITY OF LOS ANGELES *ex rel.*          CASE NO. 2:17-cv-00810-TLN-AC
     RICHARD KNUDSEN,
13                                          **CELLCO PARTNERSHIP D/B/A VERIZON**
                                            **WIRELESS'S NOTICE OF MOTION AND**
14                          Plaintiffs,     **MOTION TO DISMISS CITY OF LOS**
                                            **ANGELES'S CONSOLIDATED COMPLAINT**
15           vs.                            **IN INTERVENTION; MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN SUPPORT**
16   CELLCO PARTNERSHIP D/B/A VERIZON       **THEREOF**
     WIRELESS, and DOES 11-20,
17

18                          Defendants.     Assigned to:  Judge Troy L. Nunley
                                            Date Action Transferred:  April 18, 2017
19
                                            Date:        September 7, 2017
20                                          Time:        2:00 p.m.
                                            Courtroom: 2, 15th floor
21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 7, 2017, at 2:00 p.m., in Courtroom 2 of the above-entitled Court located at 501 "I" Street, Sacramento, California 95814, Defendant CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS ("Verizon"), by its undersigned counsel, will, and hereby does, move to dismiss the Complaint in Intervention ("Complaint"), with prejudice.

This motion is brought pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) for the following orders: to dismiss each claim of the City's Complaint, because, as the plain language of the governing contracts illustrates, Verizon had no contractual obligation to provide the City with optimization reports; to dismiss the first and second claims of the City's Complaint under the California False Claims Act ("CFCA") because the CFCA claims do not satisfy CFCA's "objective falsity" requirement; to dismiss the first and second claims of the City's Complaint under the CFCA because the CFCA claims are not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b); and to dismiss the fifth claim of the City's Complaint for unjust enrichment claim because the claim is duplicative of the City's contract claims.

Verizon's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Verizon's Request for Judicial Notice, and such further evidence, authorities, and argument as may be presented in advance of, or during, the hearing on this Motion.

Dated: July 6, 2017

Respectfully submitted,

GREENBERG TRAURIG LLP

By: _/s/Jeremy A. Meier_
Jeremy A. Meier
Attorneys for Defendant
CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...............................................................................7

II.   INTRODUCTION ...............................................................................................7

III.  FACTUAL AND PROCEDURAL HISTORY ........................................................8

     A.    The Contracts At Issue ...............................................................................8

         1.    City Contract I ...............................................................................8
         2.    City Contract II ...........................................................................10
         3.    City Contract III .........................................................................11

     B.    The City's Allegations ..............................................................................11

IV.   STANDARD OF REVIEW ................................................................................12

V.    ARGUMENT ...................................................................................................13

     I.    BECAUSE VERIZON HAD NO CONTRACTUAL OBLIGATION TO
         PROVIDE QUARTERLY OPTIMIZATION REPORTS TO THE CITY, AS A
         MATTER OF LAW, THE CITY'S CLAIMS SHOULD BE DISMISSED ...................13

         A.    City Contract I Contained No Optimization Report Requirement.........................14
         B.    City Contract II Contained No Optimization Report Requirement ......................15
         C.    City Contract III Contained No Optimization Report Requirement .....................16

     II.   THE CITY'S CFCA CLAIMS (CLAIM 1 AND CLAIM 2) SHOULD ALSO BE
         DISMISSED BECAUSE (1) THE ALLEGED STATEMENTS VERIZON
         MADE REGARDING THE OPTIMIZATION PROVISIONS LACK THE
         REQUISITE "OBJECTIVE FALSITY" NECESSARY FOR A CFCA CLAIM
         AND (2) THE CITY HAS NOT PLED ITS CFCA CLAIMS WITH
         SUFFICIENT PARTICULARITY ...................................................................17

         A.    The City's CFCA Claims Should Be Dismissed Because The Alleged
             Statements That Verizon Made Relating To Optimization Lack The
             Requisite "Objective Falsity" ............................................................17
         B.    The City's CFCA Claims Should Be Dismissed Because The City Has
             Not Pled Its Claims With Sufficient Particularity.................................................19

     III.  THE CITY'S UNJUST ENRICHMENT CLAIM (CLAIM 5) SHOULD BE
         DISMISSED BECAUSE IT IS IMPROPERLY BASED ON VERIZON'S
         ALLEGED BREACH OF CONTRACT ............................................................22

VI.   CONCLUSION.................................................................................................22

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN
INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TABLE OF AUTHORITIES**

**Federal Cases**

*Anderson v. Nationwide Mut. Ins. Co.*,
No. 212CV01057MCEDAD, 2015 WL 5698058 (E.D. Cal. Sept. 28, 2015) ................................... 13

*ASARCO, LLC v. Celanese Chem. Co.*,
792 F.3d 1203 (9th Cir. 2015) ......................................................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 12

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) ........................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 12

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014) .................................................................................... 13, 14

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ............................................................................................... 9

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ................................................................................... 13, 17

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
No. CIV. S-05-0583 LKK/GGH, 2007 WL 1791699 (E.D. Cal. June 15, 2007) ............................ 17

*In re GlenFed Secs. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ........................................................................................... 21

*U.S. ex rel. Grupp v. DHL Exp. (USA), Inc.*,
47 F. Supp. 3d 171 (W.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Grupp v. DHL
Worldwide Exp., Inc.*, 604 F. App'x 40 (2d Cir. 2015) ................................................... 18

*Hagood v. Sonoma Cty. Water Agency*,
81 F.3d 1465 (9th Cir. 1996) ..................................................................................... 18, 19

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ........................................................................................... 18

*Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*,
599 F. App'x 720 (9th Cir. 2015) ..................................................................................... 14

*United States ex rel. Lameris v. City of Green Bay*,
168 F.3d 1013 (7th Cir. 1999) ......................................................................................... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ......................................................................................... 12

*Mikes v. Straus*,
274 F.3d 687 (2d Cir. 2001) (abrogated on other grounds by *Universal Health Servs.,
Inc ex rel. Escobar. v. United States*, 136 S. Ct. 1989 (2016)) ........................................ 14

CASE NO. 2:17-cv-00810-TLN-AC

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN
INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*United States ex rel. Modglin v. DJO Glob. Inc.*,
   48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014) ............................................................... 21

*Morris v. Allstate Ins. Co.*,
   16 F. Supp. 3d 1095 (C.D. Cal. 2014) ......................................................................... 13

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ..................................................................................... 14

*United States ex rel. Roby v. Boeing Co.*,
   100 F. Supp. 2d 619 (S.D. Ohio 2000), *aff'd*, 302 F.3d 637 (6th Cir. 2002) .............. 18

*Romani v. Shearson Lehman Hutton*,
   929 F.2d 875 (1st Cir. 1991) .......................................................................................... 9

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ......................................................................................... 9

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ..................................................................................... 14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................................... 20

*Tolo, Inc. v. Wexco, Inc.*,
   993 F.2d 884 (9th Cir. 1993) ....................................................................................... 16

*United States v. Bank of Am. Corp.*,
   No. 12-CV-08399 (GBD), 2016 WL 1298985 (S.D.N.Y. Mar. 31, 2016) ..................... 14

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ....................................................................................... 20

*Wang ex rel United States v. FMC Corp*,
   975 F.2d 1412 (9th Cir. 1992) ..................................................................................... 18

*United States v. Kiewit Pac. Co.*,
   41 F. Supp. 3d 796 (N.D. Cal. 2014) ........................................................................... 12

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ....................................................................................... 13

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ............................................................................. 17, 18, 19

*United States ex rel. Yannacopoulos v. Gen Dynamics*,
   652 F.3d 818 (7th Cir. 2011) ....................................................................................... 17

**State Cases**

*AIU Ins. Co. v. Super. Ct.*,
   274 Cal. Rptr. 820 (1990) ............................................................................................. 13

*Badie v. Bank of Am.*,
   79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998) .................................................................... 13

*Cal. Med. Assn, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   114 Cal. Rptr. 2d 109 (Cal. Ct. App. 2001) .................................................................. 22

*City of Pomona v. Superior Court*,
   107 Cal. Rptr. 2d 716 (Cal. Ct. App. 2001) ................................................................ 17

*Crosby v. HLC Props., Ltd.*,
   167 Cal.Rptr.3d 354 (Cal. Ct. App. 2014) ................................................................ 16

*State ex rel. Grayson v. Pac. Bell Tel. Co.*,
   48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006), *as modified* (Sept. 12, 2006) ..................... 17

*Hervey v. Mercury Cas. Co.*,
   110 Cal. Rptr. 3d 890 (Cal Ct. App. 2010) ................................................................ 14

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ................................................................ 22

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
   51 Cal. Rptr. 2d 622 (Cal. Ct. App. 1996) ................................................................ 22

*PV Little Italy, LLC v. MetroWork Condo. Assn.*,
   148 Cal. Rptr. 3d 168 (Cal. Ct. App. 2012) ................................................................ 14

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
   197 Cal.Rptr.3d 25 (Cal. Ct. App. 2015) ................................................................ 16

*Steven v. Fid. & Cas. Co. of N.Y.*,
   377 P.2d 284 (1962) ................................................................................................ 14

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
   No. 09-MD-02015-RS, 2015 WL 1744339 (N.D. Cal. Apr. 15, 2015) ......................... 16

*White v. W. Title Ins. Co.*,
   710 P.2d 309 (1985) ................................................................................................ 14

**State Statutes**

Cal. Civ. Code § 1636 ................................................................................................ 13

Cal. Civ. Code § 1639 ................................................................................................ 13

Cal. Gov't Code § 12651(a)(1) ................................................................................... 17

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................ 12

Fed. R. Civ. P. 9(b) ......................................................................................... 7, 8, 12, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 12

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN
INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**I.    PRELIMINARY STATEMENT**

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") moves to dismiss the City of Los Angeles's claims against it under the California False Claims Act ("CFCA"), for breach of contract, and for unjust enrichment.  The City's claims fail and should be dismissed at this pleading stage for several reasons.  *First,* the City's contract-based claims (under CFCA and for breach of contract) fail because, as the plain language of the governing contracts illustrates, Verizon had no contractual obligation to provide political subdivisions (like the City) with optimization reports.  *Second*, a CFCA claim is inherently a fraud claim.  Accordingly, to state a CFCA claim, a Plaintiff must demonstrate "objective falsity."  Thus, differing, competing interpretations of a contract (which is the best the City can muster) do not suffice.  *Third*, and relatedly, the City failed to plead its fraud claims with particularity under Rule 9(b).  *Fourth,* the City's unjust enrichment claim fails because it is duplicative of its contract claims.

**II.    INTRODUCTION**

The crux of the Complaint is that Verizon was obligated to provide the City with quarterly "optimization reports" identifying the supposedly-"optimal" rate plan for each of the City's numerous wireless lines.  *See*, *e.g.*, Consolidated Complaint ("Compl.") ¶¶2–7.  But a plain reading of the governing contracts reveals that Verizon had no such reporting obligation to the City.  In fact, the "optimization" provisions in the contracts between the City and Verizon (collectively, the "City Contracts") do not even reference, much less require, quarterly "optimization reports" to be transmitted to the City**.**  Instead, they generally provide that Verizon would work to "routinely identify" users not on optimal plans and "work with" the City to place them on such plans.  Moreover, one such provision (in the second governing contract) required Verizon to act only "*upon written request*" of the City.  Further, the group purchasing contracts discussing optimization (that are incorporated by reference into the City Contracts) expressly state that "optimization reports" *did not apply* to local localities like the City.

Accordingly, because the City's claims are based on purported contractual obligations to provide quarterly "optimization reports"—but the plain language of the contracts actually reveals there is no such reporting obligation—the City's claims should be dismissed.

The City's claims are deficient and should be dismissed for several additional reasons.  Initially,

the claims under the California False Claims Act ("CFCA") fail, because they do not satisfy CFCA's "objective falsity" requirement.  Further, because a CFCA claim is a fraud claim, it must be plead with particularity under Federal Rule of Civil Procedure 9(b).  The Complaint's generalized allegations fail, however, to satisfy Rule 9(b)'s strictures.  Finally, the City's claim for unjust enrichment fails, because it is solely (and improperly) based on alleged breaches of written contracts rather than on any independent claim, as legally required.

## III.   FACTUAL AND PROCEDURAL HISTORY

### A.   The Contracts At Issue

Plaintiffs' claims purportedly arise from the following three wireless and related services contracts between the City and Verizon:  Contract No. 58608, effective July 1, 2006, between the City and Verizon ("City Contract I") (Compl. ¶ 46); Contract No. 59277, effective September 1, 2011, between the City and Verizon ("City Contract II") (Compl. ¶ 96); and Contract No. 59464, effective March 1, 2013, between the City and Verizon ("City Contract III") (Compl. ¶ 96).

These three City Contracts referenced one or more of the following so-called group purchasing contracts:

(i)      California Wireless Contract ("CWC"), a cooperative purchasing agreement between Verizon and the State of California.  (Adopted by City Contracts I, II); and

(ii)     State of Nevada RFP/Contract #1523 Amendment  ("WSCA I Contract" or "WSCA I")[1] (Incorporated by referenced to City Contracts I, II); and

(iii)    Western States Contracting Alliance (WSCA) Acting by and Through the State of Nevada and Cellco Partnership d/b/a/ Verizon Wireless RFP/Contract Number 1907 ("WSCA Contract II" or "WSCA II").

Following is a brief summary of each of the contracts.

### 1.   City Contract I

As discussed above, City Contract I became effective July 1, 2006, and "adopted" the prices, terms, and conditions of the CWC (which in turn incorporated the WSCA I by reference).  Compl. ¶¶ 27–28, 42, 46; Verizon's Request for Judicial Notice ("RJN") Exs. 1 (Contract #58608), 3 (City

---

[1] "State of Nevada RFP/Contract #1523" was entered into between Verizon and the Lead State of Nevada under the auspices of the Western States Contracting Alliance ("WSCA").

Contract I, Amendment #4).[2]

City Contract I contained the following provision regarding "optimization":

> Optimization: After the initial plan assignment, Verizon Wireless will routinely identify those users who are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan.

Compl. ¶ 46; *see also* RJN, Ex. 1 (requiring quarterly reports related to expenditures, recycled products, and products sold by certain types of sub-suppliers).

City Contract I also contained the following provision requiring Verizon to provide three types of "Quarterly Reports" to the City Purchasing Agent, *none of which* concerned optimization:

> QUARTERLY REPORTS:
> The supplier shall provide the City Purchasing Agent with quarterly reports, to include the following:
> 1) Expenditure Report that indicates Manufacturer name, description, product/part number, quantity, unit price and extended price for all items sold to the City (contract inception to report date).
> 2) Recycled Material/Product Report that indicates the quantity and description of products sold to the City that have recycled material content.  This information may be included in the Expenditure Report.
> 3) MBE/WBE/OBE Report that indicates the quantity and description of products sold to the City that were manufactured by or obtained from Minority, Women, or Other Business Enterprise sub-suppliers.  This information may be included in the Expenditure Report.

Verizon RJN, Exh. 1.

The CWC incorporated the State of California's electronic "Request for Proposals" ("eRFP 5014") as well as Verizon's Final Proposal in response thereto.  Compl. ¶¶ 27, 40.  Although eRFP 5014, §§ 5.11, and 5.11.2 included a provision relating to  "Wireless Services Optimization Reports," the CWC/eRFP 5014 expressly did not extend to the City.  Compl. ¶ 29, 30; RJN Ex. 2 (eRFP 5014, § 5.11) ("The reporting requirements in this section are *only* applicable to State departments and *not to*

---

[2] Documents whose contents are alleged in the complaint but not attached may be considered on this motion to dismiss, so long as their authenticity is not questioned and the complaint necessarily relies on them.  *See, e.g.*, *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (holding that a Court may take judicial notice of documents "whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [party's] pleading"); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does 'not convert the motion to dismiss into a motion for summary judgment.'") (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991)).

*local agencies*.") (emphasis added).

Subsequently, on October 29, 2010, the parties amended City Contract I to extend it "in accordance with" WSCA I.  RJN Ex. 3 (City Contract I, Amendment No. 4).  However, neither the October 29, 2010 amendment nor WSCA I modified City Contract I's optimization or quarterly reports provision, because WSCA I mandated that the quarterly reports described therein be sent only to the *State of Nevada*, and not to other entities such as the City.  RJN Ex. 5 (WSCA I RFP, Amendment 1), at ¶ 48.

Specifically, WSCA I included a provision in the "Reporting" section requiring bidders to provide a "quarterly optimization report for each wireless service subscriber," without specifying which entities were entitled to reports under the provision.  RJN Ex. 4 (WSCA I RFP, § 3.2.2.2).  Amendment No. 1 to the WSCA I RFP included a series of questions and answers from potential bidders related to the RFP terms.  RJN Ex. 5 (WSCA I RFP, Amendment 1).  In response to the question, "Please explain what level of detail is required for the reports referenced in Section 3.2.2.2.  Also, should these reports [i.e., those referenced in Section 3.2.2.2 of the RFP] be submitted to the Lead State and/or all the participating WSCA states," Nevada made clear that reports need only be provided to the Lead State (*i.e., Nevada*):  "Please refer to Attachment F – Quarterly Reports.  ***Reports should be submitted to the Lead State*.**  *Id*. at ¶ 48 (emphasis added).

### 2.    City Contract II

Following the expiration of City Contract I, the City entered into City Contract II, effective September 1, 2011.  Compl. ¶ 96; *see also* RJN Ex. 6 (Contract No. 59277).

City Contract II adopted the prices, terms, and conditions of the WSCA I Contract.  *See* RJN Ex. 6 (Contract No. 59277) at 1-2.

City Contract II contained the following provision regarding "Quarterly Reports," none of which includes any reference at all to "optimization":

> QUARTERLY REPORTS:
> Verizon shall provide the City Purchasing Agent with quarterly reports, to include the following:
>
> 1) Subscriber's name and cell number, description of calling plan, type of device, total minutes used and charges, data used and charges, text messages used and charges, taxes and surcharges, and total charges for each subscriber.

Reports shall be created in a MS/Excel spreadsheet or pdf format and emailed to the Procurement Analyst by the 10th of the month following contract quarter end.

*Id*. at 4.

Notably, City Contract II's reference to optimization, set forth below, did not require Verizon to provide optimization reports:

OPTIMIZATION:
Verizon Wireless shall work with the City Departments optimizing the rate plans by providing bill analysis and pricing update on a regular basis.  Verizon shall keep the City Departments updated with promotions and pricing updates.

*Id.* at 5.

### 3.      City Contract III

On or about March 1, 2013, the City entered into a third contract with Verizon.  This contract provided the following in regard to optimization:

Verizon Wireless *shall not be required* to provide rate plan optimization reports *except upon specific written request*.

Compl. ¶ 96; RJN Ex. 7 (Contract 59464, at 3) (emphasis added).  This provision is clear and unambiguous.  Verizon was not obligated to provide any optimization reports to the City, except "upon written request."  City Contract III also adopted the prices, terms, and conditions of a second WSCA contract, Contract Number 1907 ("WSCA II").  *Id.* at 1.

The WSCA II RFP contained an optimization provision similar to that in WSCA I.  *See* RJN Ex. 8 (WSCA II RFP, § 3.3.2.2).  But nothing in the WSCA II RFP suggested the optimization provision applied to entities such as the City, and nothing in the WSCA II RFP abrogated the guidance provided in Amendment No. 1 to the WSCA I RFP with respect to the scope of the optimization-reporting provision. RJN, Ex. 5 (WSCA I RFP, Amendment 1, at 48).

### B.      The City's Allegations

On September 13, 2013, Relator Richard Knudsen filed three separate CFCA actions on behalf of the City in Los Angeles County Superior Court against Verizon, Sprint Solutions, Inc. and Nextel of California, Inc., d/b/a Nextel Communications and Sprint Nextel (collectively, "Sprint"), and New Cingular Wireless National Accounts, LLC, d/b/a Cingular Wireless, now known as AT&T Mobility National Accounts LLC ("AT&T").  On September 9, 2016, the City intervened and filed a

1  "Consolidated Complaint in Intervention" in the three state court cases, adding claims for breach of

2  contract, unjust enrichment, and unfair business practices.   On October 7, 2016, Defendants removed

3  the three cases to federal court.  Finally, on April 18, 2017, this case was transferred from the Central

4  District to the Eastern District, and on April 27, 2017 it was reassigned to this Court.

5       In short, and cutting through its prolix Complaint, the City alleges that Verizon violated the

6  CFCA and breached its contracts with the City by, among other things, failing to provide "rate plan

7  optimization reports that would permit it to purchase wireless services at the lowest cost available each

8  quarter." Compl. ¶ 4.[3]  As noted above and demonstrated herein and in the contracts, however, no such

9  "rate plan optimization report[]" requirement exists.

10 **IV.   <u>STANDARD OF REVIEW</u>**

11      A motion to dismiss under Rule 12(b)(6) should be granted where, even "accept[ing] factual

12 allegations in the complaint as true and constru[ing] the pleadings in the light most favorable to the

13 nonmoving party," the pleadings fail to state a claim upon which relief can be granted.  *Manzarek v. St.*

14 *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Under Rules 8 and 12(b)(6), a

15 plaintiff must plead "enough facts [in the complaint] to state a claim to relief that is plausible on its

16 face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Further, on a motion to dismiss, the court

17 is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare

18 recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

19 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

20      In addition, under Federal Rule of Civil Procedure 9(b), heightened pleading standards apply to

21 the City's CFCA claims.  *See United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 810–11 (N.D. Cal.

22

23 ─────────────
[3] *See also* ¶ 11 (alleging that "[t]he CWC and WSCA contracts each required the Carrier Defendants to
24    provide 1) rate plan optimization reports, and 2) service at the 'lowest cost available'"); ¶ 26
      (claiming that "[t]he contracts thus explicitly placed the burden to provide rate plan optimization
25    reports on the Carriers"); ¶¶ 29–33 (asserting that City Contract I, together with the CWC, "required
      the Carriers to provide optimization reports to the City automatically"); ¶ 48 (concluding that "[b]oth
26    [WSCA] contracts required the Carrier Defendants to prepare quarterly 'optimization reports'
      identifying the lowest cost rate plan for each user or phone, as well as to provide service at the 'lowest
27    cost available'"); ¶ 108 (claiming that "the Carrier Defendants stated throughout the parties' contracts
      that they would provide optimization reports"); ¶ 122 (alleging that "Carrier Defendants knew and
28    understood the contracts required them to provide optimization reports for the City every quarter, as
      they attested when they executed the RFP and RFO responses and the contracts").

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN
INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2014) (dismissing CFCA claims for failure to satisfy Rule 9(b)).  Here, Rule 9(b) requires that the City's

factual allegations "state with particularity the circumstances constituting fraud or mistake."  Fed. R.

Civ. P. 9(b).  The City must plead "the who, what, when, where, and how of the misconduct charged,"

as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

(quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

## V.   ARGUMENT

### I.   BECAUSE VERIZON HAD NO CONTRACTUAL OBLIGATION TO PROVIDE QUARTERLY OPTIMIZATION REPORTS TO THE CITY, AS A MATTER OF LAW, THE CITY'S CLAIMS SHOULD BE DISMISSED

As the plain language of the governing contracts make clear, Verizon owed no duty to the City to

provide it with rate plan optimization reports (or to provide services at the "lowest cost available").

Accordingly, the Court should dismiss each of the claims in the Complaint based on Verizon's alleged

contractual duty to provide quarterly "optimization reports" to the City, because none of the governing

agreements imposed any such duty.

The interpretation of a contract is a question of law for the court.  *Atel Fin. Corp. v. Quaker Coal

Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003).  *See also Anderson v. Nationwide Mut. Ins. Co.*, No.

212CV01057MCEDAD, 2015 WL 5698058, at *9 (E.D. Cal. Sept. 28, 2015) (when the facts are

undisputed, "the interpretation of a contract . . . is a question of law"); *Morris v. Allstate Ins. Co.*, 16 F.

Supp. 3d 1095, 1102 n.3 (C.D. Cal. 2014) ( "[i]nterpretation of a contract is solely a question of law

unless the interpretation turns upon the credibility of extrinsic evidence") (quoting *Badie v. Bank of Am.*,

79 Cal. Rptr. 2d 273, 286 (Cal. Ct. App. 1998)).

Further, as a matter of law, the Court must interpret a contract to "give effect to the mutual

intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and

lawful."  *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting Cal. Civ. Code § 1636).

"The intent of the parties is determined 'solely from the written provisions of the contract.'"  *ASARCO,

LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1212 (9th Cir. 2015) (quoting *AIU Ins. Co. v. Super. Ct.*,

274 Cal. Rptr. 820, 831 (1990)); *see also* Cal. Civ. Code § 1639.

Here, because both the City Contracts and the referenced WSCA contracts unambiguously do

*not* require Verizon to provide quarterly "optimization reports" to the City, the Court may resolve the interpretation on the instant motion to dismiss.  *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017–18 & n. 11 (9th Cir. 2012) (affirming dismissal where contract unambiguously barred claims against third parties) (citing *Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 895 (Cal Ct. App. 2010)); *Block*, 747 F.3d at 1138 (affirming dismissal of contract claim where provisions did not constitute enforceable promises); *Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, 599 F. App'x 720, 721 (9th Cir. 2015) (affirming dismissal where contract not reasonably susceptible to plaintiff's interpretation).[4]

### A.    City Contract I Contained No Optimization Report Requirement

City Contract I did not require Verizon to provide quarterly optimization reports to the City. Rather, the "Optimization" clause of City Contract I only provided that Verizon "routinely identify" users "not in the most optimized plan" and "work with" City Department Telephone Coordinators to "place users in the most optimized plan."  Section II.A.1, *supra*; Compl. ¶ 46.  This provision on its face does not require Verizon to provide ***any*** reports to the City, let alone to provide mandatory quarterly "optimization" reports to the City.

Indeed, the only references to "quarterly reports" in City Contract I are the three types of required reports described in the aptly-named "*Quarterly Reports*" section, none of which relate to optimization.  Section II.A.1, *supra*; RJN Ex. 1 at 3; *see also PV Little Italy, LLC v. MetroWork Condo. Assn.*, 148 Cal. Rptr. 3d 168, 185 (Cal. Ct. App. 2012) (noting that "the familiar maxim, *expressio unius est exclusio alterius* (the inclusion of one thing implies exclusion of others), applies to contract interpretation") (citing *White v. W. Title Ins. Co.*, 710 P.2d 309, 314 (1985)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("The California Supreme Court has observed that 'the rule of construction *expressio unius est exclusio alterius*; i.e., that mention of one matter implies the exclusion of all others' is 'an aid to resolve the ambiguities of a contract'") (quoting *Steven v. Fid. & Cas. Co. of N.Y.*, 377 P.2d 284, 289 (1962)).

---

[4] *See also United States v. Bank of Am. Corp.*, No. 12-CV-08399 (GBD), 2016 WL 1298985, at *5 n.9 (S.D.N.Y. Mar. 31, 2016) (the meaning of a contractual provision in a false claims case presents a question of law capable of resolution on a motion to dismiss) (citing *Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001) (abrogated on other grounds by *Universal Health Servs., Inc ex rel. Escobar. v. United States*, 136 S. Ct. 1989 (2016))).

Relatedly, neither the CWC nor eRFP 5014 impose an obligation on Verizon to provide quarterly optimization reports to the City.  Indeed, the City "does not contend that the CWC itself required that the Carriers provide it with rate plan optimization reports automatically."  It fails to make that contention because it cannot do so.  Specifically, section 5.11 of eRFP 5014, which governed "Agency Reporting Requirements" and "Wireless Services Optimization Reports," unambiguously states that "[t]he reporting requirements in this section are *only* applicable to State departments and *not to local agencies*."   Compl. ¶ 29; RJN Ex. 2 (eRFP 5014, § 5.11) (emphasis added).  Under the circumstances, the Court should disregard the City's allegations that it unilaterally "exercised [an] option" to impose the eRFP 5014 §§ 5.11 and 5.11.2 reporting obligations on Verizon merely by entering into City Contract I.  Specifically, City Contract I merely incorporates the terms and conditions of the CWC Contract, including the unambiguous provision that the CWC optimization-reporting provisions do not apply to local agencies such as the City.  RJN Ex. 1 at 1, 2.  Notwithstanding the City's tortured and implausible construction, there is no provision in City Contract I or CWC that expressly grants the City such an option.

Finally, with respect to WSCA I, the optimization-reporting provision unambiguously did not extend to the City, but rather solely to the "Lead State" of Nevada. Section II.A.1, *supra*; RJN Ex. 5 at 9.

## B.     City Contract II Contained No Optimization Report Requirement

Like City Contract I, City Contract II also does not require Verizon to provide quarterly "optimization" reports to the City.[5]  The "Quarterly Reports" provision in City Contract II does not even contain any reference to "optimization," but instead lists a discrete set of data relating to *subscriber usage*.  *See* Section II.A.2, *supra*; RJN Ex. 6 at 4 ("Subscriber's name and cell number, description of calling plan, type of device, total minutes used and charges, data used and charges, text messages used and charges, taxes and surcharges, and total charges for each subscriber.").  Moreover, the "Optimization" provision in City Contract II merely requires Verizon to "work with" the City by providing bill analysis and pricing update on a "regular" basis—there is absolutely no reference to providing, much less a contractual *obligation* to provide, "optimization reports."  *Id.*; RJN Ex. 6 at 5.

---

[5] The CWC and WSCA I do not impose optimization reporting obligations on Verizon for the same reasons discussed above with respect to City Contract I.

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

And as for WSCA I, its plain language makes clear that it did not extend to the City, but only to the lead State of Nevada, as the State of Nevada itself made clear.  *See* Response to Question regarding optimization in Amendment No. 1 to WSCA I RFP.  RJN, Ex. 5 at 48.

### C.     City Contract III Contained No Optimization Report Requirement

City Contract III also did not require Verizon to provide quarterly "optimization" reports to the City.  The "Optimization" clause in City Contract III required Verizon to act only "*upon written request of the City* (but in no event more than once per quarter)" (emphasis added), and even then did not require the submission of optimization *reports* in response to such a written request.  RJN Ex. 7 at 3.[6] Critically, the lengthy Complaint does not even allege that the City ever once made a written request to Verizon to identify users who were not on an optimal rate plan.  Nor does it allege that Verizon ever refused such a request.  This fundamental defect is fatal to each and every one of the City's claims as it relates to the period in which City Contract III was in effect.[7]

Further, despite the City's allegation to the contrary, *see* Compl. ¶ 48, 92, the WSCA II contract did not impose a duty on Verizon to provide quarterly optimization reports to the City (regardless of whether they were requested).  The issue of optimization was addressed expressly in the City's negotiated contract with Verizon (City Contract III), and that unambiguous language—which explicitly limited Verizon's duties with respect to "optimization" to working with the City "upon written request"—cannot be contravened by a vague, non-specific reference to the terms and conditions of WSCA II.  To read the WSCA contract to create such an expressly conflicting obligation would violate established principles of contractual interpretation, and it would simply not be plausible.  *Cf. Speirs v. BlueFire Ethanol Fuels, Inc.*, 197 Cal.Rptr.3d 25, 40 (Cal. Ct. App. 2015) (rejecting contract interpretation that would cause conflict between provisions); *see also Tolo, Inc. v. Wexco, Inc.*, 993 F.2d 884 (9th Cir. 1993) (courts "should interpret contracts if possible so as to avoid internal conflict") (citations omitted); *Crosby v. HLC Props., Ltd.*, 167 Cal.Rptr.3d 354, 360 (Cal. Ct. App. 2014) (courts should "avoid interpretations that render any portion superfluous, void or inexplicable."); *accord In re*

---

[6] Like the provision in City Contract I, the "optimization" clause in City Contract III only asked Verizon to "routinely identify" users not in optimal plans and "work with" the City to place them in plans (assuming that the City requested in writing that Verizon do so).  RJN Ex. 7 at 3.

[7] Each of the City's five claims for relief incorporates and relies upon the same set of allegations.  *See* Compl. ¶¶ 142, 147, 152, 157, 163.

*Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 09-MD-02015-RS, 2015 WL 1744339, at *10 (N.D. Cal. Apr. 15, 2015).  And in any event, the provisions are not in conflict, as WSCA II's quarterly optimization-reporting provision, like its predecessor in WSCA I, requires the provision of reports only to the "Lead State" of Nevada and not to the City.[8]

**II.   THE CITY'S CFCA CLAIMS (CLAIM 1 AND CLAIM 2) SHOULD ALSO BE DISMISSED BECAUSE (1) THE ALLEGED STATEMENTS VERIZON MADE REGARDING THE OPTIMIZATION PROVISIONS LACK THE REQUISITE "OBJECTIVE FALSITY" NECESSARY FOR A CFCA CLAIM AND (2) THE CITY HAS NOT PLED ITS CFCA CLAIMS WITH SUFFICIENT PARTICULARITY**

**A.   The City's CFCA Claims Should Be Dismissed Because The Alleged Statements That Verizon Made Relating To Optimization Lack The Requisite "Objective Falsity"**

In addition to the above, the City's CFCA Claims should be dismissed for the additional reason that the Complaint fails to satisfy CFCA's "objective falsity" requirement.  Specifically, a fundamental requirement of the CFCA is that there must be a "falsity" in the relevant claim or statement.  *See* Cal. Gov't Code § 12651(a)(1); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011);[9] *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  The falsity must be actual and "the statement or conduct alleged must represent an objective falsehood."  *Wilson*, 525 F.3d at 376; *see also United States ex rel. Yannacopoulos v. Gen Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011); *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV S-050583 LKK/GGH, 2007 WL 1791699, at *19 (E.D. Cal. June 15, 2007).

Applying these basic principles here, the contractual terms at issue must therefore be clear and unambiguous—i.e., any statement regarding compliance with those terms must be either objectively true

---

[8] Because the WSCA II contract does not require the provision of optimization reports to entities other than the Lead State of Nevada, the fact that City Contract III referenced the WSCA II RFP (generally, without respect to the optimization-reporting or any other particular provision) in its "quarterly reports" section is immaterial.

[9] California's FCA is "'patterned on a similar federal statutory scheme (31 U.S.C. § 3729 et seq.).'" *State ex rel. Grayson v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 430 (Cal. Ct. App. 2006), *as modified* (Sept. 12, 2006) (quoting *City of Pomona v. Superior Court*, 107 Cal. Rptr. 2d 716 (Cal. Ct. App. 2001)).  "Given the 'very close similarity of California's act to the federal act, it is appropriate to turn to federal cases for guidance in interpreting the act.'" *Id.* (quoting *City of Pomona*, 107 Cal. Rptr. 2d at 716).

17                         CASE NO. 2:17-cv-00810-TLN-AC

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

or objectively false.  If there is a "disputed legal question" of whether a party complied with a "general or vague" contractual term, that term cannot form the basis of a false claims action.  *See Wilson*, 525 F.3d at 377–78.  "[M]ere allegations of poor and inefficient management of contractual duties are not actionable . . . [and] imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false . . . ." *Wilson*, 525 F.3d at 377 (internal quotations and citations omitted).  Similarly, "[e]xpressions of opinion . . . or statements as to conclusions about which reasonable minds may differ cannot be false."  *United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000) (citing *Wang ex rel United States v. FMC Corp*, 975 F.2d 1412, 1420–21 (9th Cir. 1992)), *aff'd*, 302 F.3d 637 (6th Cir. 2002).

In *Wilson*, for example, the Fourth Circuit held at the motion-to-dismiss stage that promises of compliance with vague, imprecise contractual provisions could not constitute objectively false statements:

> Relators contend that the completed DD Form 1155 constitutes a false statement because KBR agreed to the maintenance conditions in the contract even though it knew it would not, and later did not, abide by those terms.  However, this assertion *rests not on an objective falsehood*, as required by the FCA, *but rather on Relators' subjective interpretation of KBR's contractual duties*.  Given the imprecise nature of the general maintenance provisions at issue here, it is not exactly clear what would qualify as adequate (or inadequate) maintenance under Task Order 43. . . . Consequently, the question of whether KBR performed sufficient maintenance under the contract represents, at the very least, "a disputed legal question" about the "inefficient management of [one's] contractual duties."  This is precisely the sort of claim that courts have determined not to be a false statement under the FCA.

*Wilson*, 525 F.3d at 377 (emphasis added) (citing *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999)).  Ultimately, the Fourth Circuit did not permit the *Wilson* relators to proceed with their proposed FCA claims because the contractual provisions at issue could not give rise to an objective falsehood.  *Id.* at 383 (affirming the district court's denial of relators' motion to file an amended complaint including FCA claims); *see also U.S. ex rel. Grupp v. DHL Exp. (USA), Inc.*, 47 F. Supp. 3d 171, 177–79 (W.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*, 604 F. App'x 40 (2d Cir. 2015) (dismissing FCA claims rooted in an alleged breach of contract because the claims hinged on Relator's subjective interpretation of an "imprecise contractual provision" and thus lacked objective falsity.

Here, the City appears to assert either that Verizon made false statements regarding its intent to comply with the optimization provisions at issue, or that Verizon submitted "false" claims because Verizon impliedly certified in each claim for payment that Verizon was in compliance with these contractual provisions when it was not.  As the City concedes, however, the optimization provisions in City Contracts I, II and III at most obligate Verizon to "routinely identify" users "not in the most optimized plan" and "work with" City Department Telephone Coordinators to place users in the most optimized plan by providing bill analysis and pricing update on a "regular basis."  Compl. ¶¶ 45, 96,

The contracts do not define the terms "routinely identify," "work with," "most optimized," or "regular basis," nor do they specify the manner in which Verizon should communicate its user identifications to the City.  These provisions not only do not require the provision of quarterly reports on their face, but further, they are not the type of specific, objective provisions against which claims of intended or actual compliance can readily be measured as true or false.  Here, just as in *Wilson*, "it is not exactly clear what would qualify" as routine identification, or an adequate effort to work with the City, "[g]iven the imprecise nature of the . . . provisions at issue."  525 F.3d at 377.

At most, those provisions involve a "disputed legal issue [and] that is not enough to support a reasonable inference that [a statement or claim] was *false* within the meaning of the [CFCA]."  *Hagood*, 81 F.3d at 1477; *see also United States ex rel. Lameris v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("[D]ifferences in interpretation growing out of a disputed legal question are . . . not false under the [Federal] FCA.").  And even if the optimization-reporting provisions of the CWC and WSCA contracts were found to apply to the City, the issue is at best a "difference[] of interpretation growing out of a disputed legal question," which is not enough for false claims liability.

Accordingly, the City's CFCA claims should be dismissed as a matter of law.

**B.    The City's CFCA Claims Should Be Dismissed Because The City Has Not Pled Its Claims With Sufficient Particularity**

The City's CFCA allegations also fail because they do not satisfy Rule 9(b)'s heightened pleading requirement.

*First*, the City contends primarily, if not exclusively, that Verizon failed to provide quarterly optimization reports.  But the City cannot plead contractual noncompliance—much less *fraud*—with

particularity by pointing to an obligation that did not exist.  The City devotes 27 of the 39 pages in the Complaint to general background and a description of various contract provisions and documents (primarily Requests for Proposal), only some of which are relevant to its claims.  Compl. ¶¶ 1–96, 125–133.  The remainder is consumed with allegations that the "Carrier Defendants" (collectively) failed (and thus, by hindsight, must have falsely promised) to provide quarterly optimization reports meeting the specifications outlined in the various requests for proposal.

But as discussed above, the City's contracts with Verizon did not require quarterly reports, and the City's allegations, no matter how lengthy or detailed, do not allege with particularity that Verizon fraudulently promised to comply or certified compliance with an obligation under City Contract I to "routinely identify" users not on the most optimal plan, or that Verizon failed to provide bill analysis and pricing update on a regular basis under City Contract II, or that Verizon refused a written request to do the same under City Contract III.

*Second*, the City impermissibly lumps the Carrier Defendants together and fails to articulate how Verizon failed to comply with the contract provisions at issue.  The City alleges in conclusory fashion that, collectively, the Carrier Defendants "did not identify the optimal rate plan for each line of service on a quarterly or other routine basis," Compl. ¶ 97, and that they failed to "direct that rate plan assignments are analyzed and new rate plan assignments are recommended each quarter or routinely," *id.* ¶ 109(c).  These allegations are insufficient.  "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *United States v. Corinthian Colleges,* 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP,* 476 F.3d 756, 764–65 (9th Cir. 2007)).[10]  In any event, the City's support for these allegations once again relates exclusively to Defendants' alleged failure to provide so-called "industry standard" quarterly optimization *reports*.  *See* Compl. ¶¶ 98–108.

---

[10] Even the City's allegations relating to "optimization reports" impermissibly lump each of the Defendants together and include conclusory statements such as "the Carrier Defendants did not routinely produce such reports and the City did not receive them."  Compl. ¶ 98; *see also id.* ¶109 (concluding that "[e]ach Carrier Defendant" failed to take certain steps to comply with its purported obligations, without providing factual support as to any defendant).  Allegations that are specific to other defendants, such as those relating to allegedly "false or misleading" reports submitted to the City, are irrelevant to the City's claims against Verizon.  *Id.* ¶¶ 102, 105, 106.

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Moreover, the City's allegation that "the Carrier Defendants sporadically prepared reports

2    related to rate plan selections, often in response to requests from City departments or representatives,"

3    Compl. ¶ 98, directly contradicts the City's assertion that Verizon did not "work with" the City to place

4    users on the optimal rate plans as required by City Contracts I, II and III.

5    While the City insists that the reports Verizon provided were not "optimization reports," it

6    cannot and does not contest that those reports were part of Verizon's efforts to "work with" the City.

7    City Contracts I, II and III did not otherwise specify how Verizon was to "work with" the City, and the

8    City has alleged no facts suggesting that Verizon did not, in fact, work with the City as referenced in the

9    contracts.

10    *Third*, the City's conclusory allegations that Verizon was unwilling or unable to "routinely

11    identify" users who were not on the most optimal plan lack not only particularity but also plausibility, as

12    they are contradicted by the City's allegations elsewhere in the Complaint.  The City's allegation that

13    "the Carrier Defendants sporadically prepared reports related to rate plan selections, often in response to

14    requests from City departments or representatives," directly contradicts the City's assertion that Verizon

15    did not "work with" the City to place users on the optimal rate plans as required by City Contracts I, II

16    and III.  Compl. ¶ 98.

17    While the City insists that the reports Verizon provided were not "optimization reports" as

18    defined in the CWC and WSCA master contracts, it cannot and does not contest that those reports were

19    part of an effort to "work with" the City.  City Contracts I, II and III did not otherwise specify how

20    Verizon was to "routinely identify" users, and the City has alleged no facts suggesting that Verizon did

21    not, in fact, do so.

22    In sum, the Complaint fails to articulate *any* basis for the City's allegations that Verizon

23    breached the applicable contract provisions, other than Verizon's alleged failure to provide optimization

24    reports, which is irrelevant.  Specifically, the City has failed to allege "the manner in which [Verizon's]

25    statements of compliance were] untrue and misleading, or the circumstances indicating that [they were]

26    false."  *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014)

27    (citing *In re GlenFed Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

28    Accordingly, the City's first and second claims for relief should be dismissed.

III.   **THE CITY'S UNJUST ENRICHMENT CLAIM (CLAIM 5) SHOULD BE DISMISSED BECAUSE IT IS IMPROPERLY BASED ON VERIZON'S ALLEGED BREACH OF CONTRACT**

The City's claim for unjust enrichment must be dismissed because it is entirely based entirely on Verizon's alleged breaches of written contracts, and is thus duplicative.  *See* Compl. ¶¶ 157-62, 163-66; *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330–32 (Cal. Ct. App. 2012); *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 51 Cal. Rptr. 2d 622, 628 (Cal. Ct. App. 1996); *see also Cal. Med. Assn, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (Cal. Ct. App. 2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights.").  The City's breach of contract claim "plead[s] the existence of an enforceable agreement" while its unjust-enrichment claim "d[oes] not deny the existence or enforceability of that agreement."  *Klein*, 137 Cal. Rptr. 3d at 332.

In short, because the City's claim is duplicative, the City accordingly is "precluded from asserting a quasi-contract claim under the theory of unjust enrichment."  *Id.*

VI.   **CONCLUSION**

For the foregoing reasons, Verizon respectfully requests that the Court dismiss (1) each of the City's claims, because Verizon had no contractual obligation to provide political subdivisions (like the City) with optimization reports; (2) the City's First and Second Claims (the CFCA claims), for lack of the requisite "objective falsity" and the City's failure to satisfy the strictures of particularity under Rule 9(b); and (3) the City's Fifth Claim for unjust enrichment.

Dated:  July 6, 2017

Respectfully submitted,

GREENBERG TRAURIG LLP

By: _/s/Jeremy A. Meier_

Jeremy A. Meier
Attorneys for Defendant
CELLCO PARTNERSHIP
D/B/A VERIZON WIRELESS

VERIZON'S NOTICE OF MOTION AND MOTION TO DISMISS CITY OF LOS ANGELES'S COMPLAINT IN INTERVENTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF