**GREENBERG TRAURIG, LLP**
JEREMY A. MEIER (SBN No. 139849)
MICHAEL D. LANE (SBN 239517)
1201 K Street, Suite 1100
Sacramento, CA  95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
meierj@gtlaw.com
lanemd@gtlaw.com

Attorneys for Defendant

CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES *ex rel.* RICHARD KNUDSEN,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, and DOES 11-20,<br><br>                    Defendants. | CASE NO. 2:17-cv-00810-TLN-AC<br><br>**CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS'S REPLY IN SUPPORT OF MOTION TO DISMISS CITY OF LOS ANGELES'S CONSOLIDATED COMPLAINT IN INTERVENTION**<br><br>Assigned to:  Judge Troy L. Nunley<br>Date Action Transferred:  April 18, 2017<br><br>Date:        September 7, 2017<br>Time:        2:00 p.m.<br>Courtroom: 2, 15th floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................3

II. AS A MATTER OF LAW, THE CITY WAS NOT ENTITLED TO QUARTERLY OPTIMIZATION REPORTS ....................................................................................................3

    A. City Contract I Contained No Optimization Report Requirement ....................................3
    B. City Contract II Contained No Optimization Report Requirement ...................................4
    C. City Contract III Contained No Optimization Report Requirement ..................................6

III. THE CITY FAILS TO DEMONSTRATE "OBJECTIVE FALSITY" .....................................7

IV. THE CITY HAS NOT PLEADED ITS CLAIMS WITH PARTICULARITY .........................9

V. THE CITY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ..........................10

VI. LEAVE TO AMEND SHOULD NOT BE GRANTED .........................................................10

VII. CONCLUSION .......................................................................................................................11

# I. INTRODUCTION

Plaintiff City of Los Angeles's opposition is based upon a tortured effort to create a contractual obligation that simply does not exist. Indeed, Plaintiff fails to identify a single provision in City Contracts I, II, or III that obligated Verizon to provide quarterly optimization reports. Failing to do so, Plaintiff argues—without any reference to any discrete contractual provision—that the City Contracts' "optimization" clauses "necessarily" require Verizon to provide such reports to the City. As Verizon demonstrated in its initial Memorandum, this type of vague and conclusory argument is insufficient, even at this pleading stage, to state a claim.

In short, because the City's claims are based on purported contractual obligations to provide quarterly "optimization reports"—but the plain language of the contracts actually reveals there is no such reporting obligation—the City's claims should be dismissed. The City's claims also fail because the plain contractual language does not rise to the level of "objective falsity" under the California False Claims Act ("CFCA"); the City fails to satisfy its pleading burden under Rule 9(b); and the City's unjust enrichment claim is impermissibly predicated upon alleged breaches of written contracts.

# II. AS A MATTER OF LAW, THE CITY WAS NOT ENTITLED TO QUARTERLY OPTIMIZATION REPORTS

The City's Opposition effectively confirms that there are no provisions in City Contracts I, II, or III requiring Verizon to provide quarterly optimization reports. Accordingly, the Court should dismiss each of the claims in the Complaint based on Verizon's alleged contractual duty to provide quarterly "optimization reports" to the City, because none of the governing agreements imposed any such duty.[1]

### A. City Contract I Contained No Optimization Report Requirement

The City concedes that the California Wireless Contract ("CWC"), the group-purchasing contract incorporated by reference in City Contract I, did not require Verizon to provide it with quarterly

---

[1] The City asserts that dismissal in a contract case is proper only when "the agreement is not susceptible to **any** interpretation that could support plaintiffs' theories of liability." Opp. at 8 (citing *Gaines v. Home Loan Ctr., Inc.*, No. SA CV 08-667 AHS (RNBx), 2010 WL 11506442, at *7 (C.D. Cal. May 24, 2010)) (emphasis added by the City). But the California Supreme Court case upon which *Gaines* relies, *Martinez v. Socoma Companies*, made clear a contract claim will survive dismissal only if the plaintiff's interpretation is one to which the contract is "*reasonably* susceptible." 11 Cal. 3d 394, 400 (1974) (emphasis added). And *Gaines* itself dismissed breach-of-contract claims on a motion to dismiss because the "conduct alleged by Plaintiffs cannot be a breach" of the relevant agreements under their plain terms. *See Gaines*, 2010 WL 11506442 at *7.

optimization reports. Opp. at 8. Instead, the City asserts that City Contract I's "Optimization" clause "necessarily" required Verizon to provide such reports to the City. Plainly, it did not.

City Contract I's "Optimization" clause provided only that Verizon "routinely identify" users "not in the most optimized plan" and "work with" City Department Telephone Coordinators to "place users in the most optimized plan." Compl. ¶ 46; Mot. at 2, 6–7. The City simply asserts—without citation to any contract language or other source—that "optimization reports are an integral part of optimization" and that there was no way for Verizon to fulfill its contractual obligation without providing them. Opp. at 9. This argument does not withstand scrutiny. Verizon could have satisfied this provision in many ways other than providing quarterly reports—for example, by routinely communicating or meeting with City officials to discuss and evaluate the City's rate plans (as discovery would show Verizon in fact did). Moreover, the City ignores the fact that City Contract I contained a "Quarterly Reports" provision that outlined specific types of reports be provided to the City—*none of which related to optimization*. *See* Verizon RJN Ex. 1 at 3; Mot. at 8–10. To the extent there could be any doubt as to whether City Contract I required optimization reports, this provision removes it. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("The California Supreme Court has observed that 'the rule of construction *expressio unius est exclusio alterius*; i.e., that mention of one matter implies the exclusion of all others' is 'an aid to resolve the ambiguities of a contract'" (italics added) (quoting *Steven v. Fid. & Cas. Co. of N.Y.*, 377 P.2d 284, 289 (Cal. 1962))).[2]

### B. City Contract II Contained No Optimization Report Requirement

The City does not argue that the language of City Contract II required Verizon to provide the City with quarterly optimization reports. Like City Contract I, City Contract II contained a "Quarterly Reports" provision, which did not require optimization reporting and did not include any reference to "optimization." RJN Ex. 6 at 4 ("Subscriber's name and cell number, description of calling plan, type of device, total minutes used and charges, data used and charges, text messages used and charges, taxes and surcharges, and total charges for each subscriber."). Moreover, the "Optimization" provision in

---

[2] The City claims that it should be allowed to proceed with discovery in order to prove that the "routinely identify" language required reporting. Opp. at 9 n.1. No amount of discovery, however, can alter the plain language of the contracts, which forecloses the City's interpretation.

City Contract II merely requires Verizon to "work with" the City by providing bill analysis and pricing update on a "regular" basis—there is absolutely no reference to providing, much less a contractual *obligation* to provide, "optimization reports." *Id.*; RJN Ex. 6 at 5.

The City nevertheless claims that the optimization-reporting provision of the WSCA I contract, incorporated by reference in City Contract II, required Verizon to provide quarterly optimization reports. Opp. at 9–10. As Verizon explained in its Motion, however, that provision did not extend to the City; it only applied to the "*Lead State" of Nevada*, as Nevada itself made clear in response to a specific question on the topic in Amendment #1 to the WSCA I RFP ("Question 48"). Mot. at 9-10, 15; Verizon RJN Ex. 5 at ¶48. The City cites the language in WSCA I's optimization-reporting provision that required the provision of a "quarterly optimization report *for* each wireless service subscriber," Opp. at 10 (emphasis added), but that language does not address the entities *to* which reports were due.[3] Question 48 unambiguously answers that question and makes clear that optimization reports should be provided to the Lead State only. Mot. at 9-10, 15.

The City asserts that California's Request for Offer ("RFO") and Participating Addenda "confirm" that the City was entitled to optimization reports. Opp. at 11. The RFO, however, does not require quarterly optimization reporting to the City, as it provided only that reports be provided to California's "State Contract Administrator" and "may be to the ATRs [Authorized Telephone Representatives at state agencies] at any time upon request." City RJN Ex. 1 § 7.16.2.

The City also argues that extending the optimization-reporting provisions in WSCA I to political subdivisions is consistent with the "purpose" of cooperative purchasing. Opp. at 10–11. This argument cannot be squared with the City's contemporaneous concession that the CWC, the cooperative purchasing agreement that, for the City, directly preceded WSCA, *excluded* political subdivisions from its optimization-reporting requirement. *Id.* at 8. It also is at odds with other provisions of the WSCA I agreement, which the City does not dispute distinguished between the Lead State of Nevada and other entities (including political subdivisions such as the City) in numerous respects—for example, in

---

[3] The definition of "subscriber" in the WSCA I RFP, cited by the City, Opp. at 10, also does not answer this question. Question 48 does, and the "subscriber" definition must be interpreted in a manner that does not conflict with its plain language. *See, e.g.*, *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 986-87 (2015); *Crosby v. HLC Props., Ltd.*, 223 Cal. App. 4th 597, 604 (2014).

connection with the submission of administrative fees, *id.* at 13. The City also points to general contractual language providing that Verizon should supply services to political subdivisions at the same "terms, conditions, and prices," Opp. at 11, but that general language does not modify contractual terms that are "expressly unique to Nevada," as the City admits. *See id.*[4]

The City further asserts that Question 48's reference to the "Attachment F" administrative fee report form somehow limits the applicability of Question 48 to administrative fee reports. Opp. at 12–13. This assertion is incorrect. Question 48 consists of two questions and two answers. The questions were: "Please explain what level of detail is required for the reports referenced in Section 3.2.2.2. Also, should these reports be submitted to the Lead State and/or all the participating WSCA states." Verizon RJN Ex. 5 at ¶48. Nevada answered the first question—regarding the level of detail—as follows: "Please refer to Attachment F—Quarterly Reports." *Id.* As the City acknowledges, Section 3.2.2.2 of the RFP referenced four types of reports, including quarterly optimization reports. Opp. at 12–13; Verizon RJN Ex. 4 § 3.2.2.2. The RFP did not include template forms as attachments for any of these types of reports other than Attachment F for the administrative fee reports.

The second question and answer in Question 48 addressed a different subject—the entities to which the reports should be provided. In response to the second question—"Also, should these reports [i.e., the reports in Section 3.2.2.2] be submitted to the Lead State and/or all the participating WSCA states"—Nevada responded: "Reports should be submitted to the Lead State." Verizon RJN Ex. 5 at ¶48. The plain language of this answer is not limited to administrative reports, but explicitly extends to all of the "reports" referenced in Section 3.2.2.2, including optimization reports.

In sum, the quarterly optimization-reporting provision of the WSCA I RFP, like that of the CWC, does not extend to the City, and no other basis exists for a quarterly-reporting obligation under City Contract II.

**C.    City Contract III Contained No Optimization Report Requirement**

As discussed in Verizon's Motion, City Contract III expressly states that Verizon "shall not be required" to provide reports—optimization or otherwise—"except upon specific written request," and

---

[4] The City's assertion (unsupported by contract language) that "the optimization provisions are not one of" the terms unique to Nevada, Opp. at 11, directly conflicts with the language in Question 48.

the City does not even allege (nor could it) that it made a specific written request to Verizon for an optimization report that Verizon failed to provide. *See* RJN Exh. 7 ("<u>Verizon Wireless shall not be required to provide any usage or other reports except upon specific written request by City's Purchasing Agent or an Authorized Contact</u> on the account/profile for which a report is requested. <u>Verizon Wireless shall not be required to provide rate optimization reports except upon specific written request by an Authorized Contact on the account/profile for which a report is requested.</u>") (emphasis added).

The City's allusion to Paragraph 98 of its Complaint is unavailing. Paragraph 98 asserts only that "the Carrier Defendants sporadically prepared reports related to rate plan selections, often in response to requests from City departments or representatives," and is premised on the incorrect claim that Verizon was required to provide quarterly or routine reports. As a result, there is absolutely no allegation of even a single specific occasion on which a report was requested and not provided, let alone who requested and when. Compl. ¶ 98. This general, conclusory allegation does not pass muster under Rule 9(b) (or even Rule 8).

### III. THE CITY FAILS TO DEMONSTRATE "OBJECTIVE FALSITY"

The City acknowledges, as it must, that "allegations of 'vague,' 'imprecise,' or 'subjective' contractual terms generally do not give rise to objective falsehoods and thus cannot serve as the basis for liability under the CFCA." Opp. at 14 (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376–77 (4th Cir. 2008)). But in an attempt to escape this objective falsity requirement, the City misstates the foundation of its CFCA claims, erroneously reads into the relevant contracts an optimization reporting requirement, and mischaracterizes Verizon's legal arguments.

*First*, the City asserts that it "alleges more than a breach of contract claim." Opp. at 14. But the City's theory of liability for each of its claims necessarily depends on a breach of an alleged contractual obligation. The City describes two potential theories of CFCA liability: 1) that Verizon's claims for payment are false because they impliedly certified *compliance with a contractual obligation*, and 2) that Verizon fraudulently induced the City to contract by falsely promising *compliance with a contractual obligation*. *See id.* A party cannot, however, falsely certify compliance with an obligation that does not exist. Nor can a party fraudulently induce another to enter into a contract based on an alleged false

promise to comply with an obligation that does not exist.[5] If the contracts at issue do not contain the specific reporting obligation the City alleges, then there can be no false certification or fraudulent inducement. *See U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) ("Logically, then, any claims for payment based on work that satisfied [the defendant]'s contractual obligations to the [plaintiff] could not have been 'false or fraudulent' within the meaning of the FCA.").

*Second*, the City attempts to read "objectivity" into imprecise contractual provisions by mischaracterizing them. The City repeatedly cites an alleged "reporting" requirement and claims that "Verizon's compliance with" the relevant provision "can be objectively assessed" because "Verizon either provided the required reports or it didn't." Opp. at 16. But the contracts at issue did not require any reports—only that Verizon "routinely identify" users in sub-optimal rate plans and "work with the City" to place those users in optimal plans. *See* Section II.A, *supra*; Mot. at 8–11. This is a far cry from the type of clear and precise contractual term that can serve as the basis for an objectively false statement or representation. To the contrary, it is exactly the type of language that courts have found cannot serve as a basis for an objectively false statement as a matter of law. *See, e.g.*, *Wilson*, 525 F.3d at 383; *U.S. ex rel. Grupp v. DHL Exp. (USA), Inc.*, 47 F. Supp. 3d 171, 177–79 (W.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*, 604 F. App'x 40 (2d Cir. 2015) (dismissing an FCA complaint with prejudice because "no additional detail will transform this contract ambiguity into a fraud claim"). The City cannot base its claims of fraud on its own interpretation of a set of imprecise contractual provisions—"[t]o hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract." *Wilson*, 525 F.3d at 378; *see also U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836–37 (7th Cir. 2011); *United States ex rel v. QTC Medical Services, Inc.*, 2016 WL 795738, at *5 (C.D. Cal. Feb. 19, 2106); *Grupp*, 47 F. Supp. 3d at 178; Mot. at 17–21.

*Third*, the City frames Verizon's objective falsity argument as one focusing on the "reasonableness" of Verizon's reading of a contractual term. This is incorrect. Unlike the defendant in

---

[5] The only "false statements" that the City cites in support of its claims relate to Verizon's intent to comply with the contractual provisions at issue. *See* Opp. at 14, Compl. ¶¶ 110, 135-136, 144, 149.

*U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 n.3 (9th Cir. 1999),[6] Verizon is not asserting here that any "reasonable interpretation" can negate the "falsity" of a claim. Whether a statement of contractual compliance can be proven objectively false is not a question of the "reasonableness" of any particular interpretation. Rather, it is a question of whether *the language itself* lends itself to objectivity. Here, it is the "imprecise nature," *Wilson*, 525 F.3d at 377, of the at-issue contractual language that negates the possibility of an objectively false statement of compliance—the language of City Contract I to "routinely identify" users and "work with" the City to place them in the "most optimized" rate plans, City Contract II to "work with" the City by providing bill analysis and pricing updates on a "regular" basis, or City Contract III that "[a]ny reports to be provided by Verizon Wireless under this Agreement will be in a format and *contain such content as may be mutually agreed to* by Verizon Wireless and The City of Los Angeles." (emphasis added).

In the absence of clear and precise contractual language that can form the basis of an objectively false statement—and there is admittedly no such language here—as a matter of law, the City cannot maintain its CFCA claims, and they must be dismissed.

## IV. THE CITY HAS NOT PLEADED ITS CLAIMS WITH PARTICULARITY

The City cannot plead fraud with particularity merely by alleging, even at length, that Verizon did not provide quarterly optimization reports. Opp. at 17. Indeed, because Verizon as a matter of law was not obligated to provide such reports to the City, no amount of pleading that Verizon failed to do so can adequately allege fraud by Verizon (or even contract violations). *See* Mot. at 17–21; Section II, *supra*. Perhaps because its Complaint focuses on optimization reports (which are not required under the contracts), the City fails to plead at all, much less with specificity, *how* Verizon failed to comply with the actual contract provisions at issue, which speak only to "routinely identify[ing]" users and "work[ing] with" the City on optimization. The City accordingly fails to plead either the "*who*," "*what*," "*where*," and "*when*" of an allegedly false statement or "the manner in which [the alleged false statement was] untrue and misleading, or the circumstances indicating that [it was] false." *United States*

---

[6] *Parsons* is also distinguishable on the ground that it involved an interpretation of a federal regulation, not an imprecise contract provision. 195 F.3d at 462–63. *Parsons* specifically distinguished its holding from earlier 9th Circuit decisions addressing the scope of false claims liability based on alleged breaches of contract. *Id*. at 463.

*ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014) (citing *In re GlenFed Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

Put simply, the City does not plead how Verizon failed to "routinely identify" and "work with" the City on optimization—to the contrary, its allegations actually suggest Verizon did so. *See* Mot. at 10-11. Further, as noted above, the City nowhere alleges any written request to Verizon for optimization reports or information, let alone that Verizon failed to comply with such a request, which is fatal to its claims under City Contract III.

The City's related contention—that it can avoid its burden to distinguish between Defendants by arguing that they all did the same thing, *see* Opp. at 17-18—could be made by any Plaintiff in a multi-Defendant case and is wrong as a matter of law. "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (per curiam)).

## V.   THE CITY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Verizon does not argue, as the City suggests, that a party may not plead in the alternative. Rather, Verizon argues that the City did not plead the absence of an enforceable agreement and, as a result, cannot plead a claim for unjust enrichment, in the alternative or otherwise. The only case cited by the City, *Klein v. Chevron U.S.A., Inc.*, is not to the contrary. 137 Cal. Rptr. 3d 293 (Ct. App. 2012). The court in *Klein* recognized that the plaintiffs there generally could pursue inconsistent theories of recovery, but could not pursue both unjust enrichment and contact claims given that their complaint exclusively alleged the existence of an enforceable agreement. *Id.* at 330–32. Similarly, because the City's claim for unjust enrichment is based entirely on Verizon's alleged breaches of written contracts, *see* Compl. ¶¶ 157–162, 163–166; Opp. at 19, it is properly dismissed at the pleadings stage.

## VI.  LEAVE TO AMEND SHOULD NOT BE GRANTED

Under these circumstances, the City should not be granted leave to amend. "When [as here] a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (quoting *Chaset v. Fleer/Skybox*

*Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002)); *Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*, 190 F. Supp. 3d 976, 986–87 (E.D. Cal. 2016).  Given that the City cannot fairly plead around the unambiguous language of the contracts, and all of its claims rise and fall on its demonstrably erroneous contractual interpretation, no further pleading could possibly state a claim for relief.

Further, leave to amend would not be warranted even if Verizon's motion were granted solely on Rule 9(b) grounds.  The City filed the operative Complaint after literally *years* of investigation (including document production from Verizon to the City).  It is reasonable to conclude that the City did not previously omit any material allegations that it presumably could now seek to include.

## VII. CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court dismiss (1) each of the City's claims, because Verizon had no contractual obligation to provide political subdivisions (like the City) with optimization reports; (2) the City's First and Second Claims (the CFCA claims), for lack of the requisite "objective falsity" and the City's failure to satisfy the strictures of particularity under Rule 9(b); and (3) the City's Fifth Claim for unjust enrichment.

Dated:  August 24, 2017

Respectfully submitted,

GREENBERG TAURIG, LLP

By: /s/ Michael D. Lane
Jeremy A. Meier
Michael D. Lane
Attorneys for Defendant
CELLCO PARTNERSHIP
D/B/A VERIZON WIRELESS