UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES ex rel. RICHARD KNUDSEN,<br><br>Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP dba VERIZON WIRELESS; and DOES 11-20,<br><br>Defendants. | No. 2:17-cv-00810-TLN-AC<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant Cellco Partnership dba Verizon Wireless's ("Defendant") Motion to Dismiss Plaintiff's Consolidated Complaint in Intervention. (ECF No. 67.) Plaintiff City of Los Angeles ("Plaintiff") filed an opposition. (ECF No. 70.) For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss. (ECF No. 67.)

///
///
///
///
///

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contracted with Defendant for wireless airtime, wireless data, and equipment. (ECF No. 1-2 ¶ 1.) Plaintiff alleges Defendant agreed to provide Plaintiff with rate plan optimization on a quarterly or routine basis. (ECF No. 1-2 ¶¶ 2, 4.) Moreover, Plaintiff alleges Defendant was to identify the one rate plan among those offered for each wireless customer that would result in the lowest cost to Plaintiff. (ECF No. 1-2 ¶ 4.) Plaintiff further alleges Defendant was contractually obligated to provide Plaintiff with rate plan optimization reports that would permit Plaintiff to purchase wireless services at the lowest cost available. (ECF No. 1-2 ¶ 4.) However, Plaintiff alleges Defendant did not provide rate plan optimization reports to Plaintiff, resulting in millions of dollars of overcharges. (ECF No. 1-2 ¶¶ 5, 7.)

Plaintiff's claims arise from three wireless and related services contracts between Plaintiff and Defendant: (1) Contract Number 58608 ("City Contract I"), effective July 1, 2006, (ECF No. 1-2 ¶ 46; ECF No. 68-1); (2) Contract 59277 ("City Contract II"), effective September 1, 2011, (ECF No. 1-2 ¶ 96; ECF No. 68-6); and (3) Contract 59464 ("City Contract III"), effective March 1, 2013, (ECF No. 1-2 ¶ 96; ECF No. 68-7.)

The parties entered into the three City Contracts under three group purchasing contracts. The first group purchasing contract was the California Wireless Contract ("CWC"), a cooperative purchasing agreement between Defendant and the State of California. (ECF No. 1-2 ¶ 3.) The second group purchasing contract was the State of Nevada RFP/Contract Number 1523 ("WSCA I"). (ECF No. 1-2 ¶ 48.) The third group purchasing contract is the Western States Contracting Alliance Acting by and Through the State of Nevada and Cellco Partnership dba Verizon Wireless RFP/Contract Number 1907 ("WSCA II"). (ECF No. 1-2 ¶ 48.)

City Contract I took effect July 1, 2006, and adopted the prices, terms, and conditions of the CWC. (ECF No. 68-1 at 4.) City Contract I contained an optimization provision which states, "Optimization: After the initial plan assignment, Verizon Wireless will routinely identify those users that are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan." (ECF No. 68-1 at 5.) The CWC incorporated the State of California's electronic Request for Proposals 5014 ("eRFP 5014") and

Defendant's Final Proposal in response. (ECF No. 1-2 ¶¶ 27, 40.) Although eRFP 5014 contained a provision on wireless services optimization reports, (ECF No. 68-2 at 84–85), this provision expressly did not apply to Plaintiff as a local agency, (ECF No. 1-2 ¶ 29; ECF No. 68-2 at 84.) On October 29, 2010, Plaintiff and Defendant amended City Contract I to extend until April 2, 2011, in accordance with the WSCA I. (ECF No. 68-3 at 2.)

City Contract II took effect September 1, 2011, and expressly adopted the terms of the WSCA I. (ECF No. 68-6 at 4.) City Contract II's optimization provision did not specifically reference optimization reports as it stated, "Verizon Wireless shall work with the City Departments optimizing the rate plans by providing bill analysis and pricing update on a regular basis. Verizon shall keep the City Departments updated with promotions and pricing updates." (ECF No. 68-6 at 8.) The WSCA I request for proposal ("RFP") and resulting contract required Defendant to produce a "[q]uarterly optimization report for each wireless service subscriber." (ECF No 68-4 at 9.) Further, the WSCA I defined a subscriber as "[a] using entity who contracts to receive and pay for wireless or walkie-talkie services." (ECF No. 68-4 at 7.)

City Contract III took effect March 1, 2013, and adopted the terms and conditions of the WSCA II. (ECF No. 68-7 at 2.) The WSCA II RFP and resulting contract required Defendant to produce a "[q]uarterly optimization report for each wireless/broadband service subscriber." (ECF No. 68-8 at 12.) City Contract III stated, "Verizon Wireless shall not be required to provide rate optimization reports except upon specific written request by an Authorized Contact on the account/profile for which a report is requested." (ECF No. 68-7 at 4.)

On September 13, 2013, Relator Richard Knudsen filed three separate CFCA actions on behalf of Plaintiff in the Los Angeles County Superior Court against Defendant, Sprint Solutions, Inc. and Nextel of California, Inc. dba Nextel Communications and Sprint Nextel, and New Cingular Wireless National Accounts, LLC dba Cingular Wireless, now known as AT&T Mobility National Accounts LLC (collectively, "Carrier Defendants"). (ECF No. 67 at 11; ECF No. 70 at 9.) The three cases were consolidated in the Los Angeles County Superior Court. (ECF No. 70 at 9.) Thereafter, Plaintiff filed a Consolidated Complaint in Intervention ("Complaint") against Carrier Defendants on September 9, 2016. (ECF No. 1-2.)

3

Plaintiff's Complaint alleges five causes of action against Carrier Defendants: (1) violation of the California False Claims Act ("CFCA") section 12651(a)(1); (2) making false records and statements in violation of the CFCA section 12651(a)(2); (3) unfair business practices in violation of California Business and Professions Code sections 17200 et seq.; (4) breach of written contract; and (5) unjust enrichment. (ECF No. 1-2 ¶¶ 142–166.)

On October 7, 2016, Carrier Defendants removed the three cases to the United States District Court for the Central District of California. (ECF No. 1; ECF No. 67 at 12.) On April 17, 2017, the three cases were transferred to this Court. (ECF No. 53.) Defendant filed the instant motion to dismiss on July 6, 2017. (ECF No. 67.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

As a preliminary matter, Defendant submits several extrinsic documents in support of its motion.[1] (ECF No. 68.) In its opposition, Plaintiff also submits extrinsic documents.[2] (ECF No. 70-1.) Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). However, a court may consider extrinsic documents on a Rule 12(b)(6) motion when the parties do not contest the authenticity of the documents and the complaint necessarily relies on their contents. *Id.* Here, the contracts at issue and documents involved in formation of those contracts are central to Plaintiff's claims. Moreover, the Court notes that there is no apparent dispute as to the authenticity of the documents provided. Therefore, the Court will consider the relevant extrinsic evidence provided by the parties.

Defendant moves to dismiss all Plaintiff's causes of action with prejudice. Specifically, Defendant argues: (1) each cause of action should be dismissed because Defendant had no contractual obligation to provide Plaintiff with optimization reports; (2) the first and second causes of action should be dismissed because they do not satisfy the CFCA's objectivity

---

[1] Defendant requests the Court take judicial notice of: (1) City of Los Angeles Supply Contract No. 58608 and attachments, effective date July 1, 2006; (2) California Department of General Services Wireless Equipment and Services eRFP # DGS 5014; (3) City of Los Angeles Supply Contract No. 58608 – Amendment 04 Wireless Telephones, Accessories, and Airtime Services, dated October 29, 2010; (4) State of Nevada Division of Purchasing on Behalf of the Western States Contracting Alliance, Request for Proposal No. 1523, dated February 8, 2006 ("Request for Proposal No. 1523"); (5) Amendment No. 1 to Request for Proposal No. 1523, dated March 1, 2006; (6) City of Los Angeles Supply Contract No. 59277 and attachments, effective date September 1, 2011; (7) City of Los Angeles Supply Contract No. 59464, effective date March 1, 2013; (8) State of Nevada Division of Purchasing on Behalf of the Western States Contracting Alliance, Request for Proposal No. 1907, dated February 3, 2011 ("Request for Proposal No. 1907"). Under Federal Rule of Evidence 201, a court can take judicial notice of a document when the subject "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." For the reasons stated in Defendant's request and noting no opposition by Plaintiff, the Court GRANTS Defendant's request and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201, (ECF Nos. 68, 68-1, 68-2, 68-3, 68-4, 68-5, 68-6, 68-7, and 68-8.)

[2] Plaintiff requests the Court take judicial notice of: (1) DGS Request for Offer #DGS-1070 issued by the State of California Department of General Services on November 12, 2010; (2) the Second Amended Complaint filed in *State of California ex rel. OnTheGo Wireless, LLC v. Cellco Partnership, et al.*, Sacramento Superior Court, Case No. 34-2012-00127517 ("*OnTheGo*") on May 6, 2016; (3) September 13, 2016 Order on Defendants' demurrer to the Second Amended Complaint in *OnTheGo*; and (4) Attachment F to WSCA RFP No. 1523, dated March 1, 2006. Under Federal Rule of Evidence 201, a court can take judicial notice of a document when the subject "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." For the reasons stated in Plaintiff's request and noting no opposition by Defendant, the Court GRANTS Plaintiff's request and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201, (ECF No. 70-1.)

requirements; (3) the first and second causes of action should be dismissed because they are not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b); and (4) the Plaintiff's fifth cause of action should be dismissed because it is duplicative. (ECF No. 67 at 2.) The Court will address each argument in turn.

### A. Contractual Obligation to Provide Quarterly Optimization Reports

Defendant argues Plaintiff's causes of action should be dismissed because Defendant had no contractual obligation to provide quarterly optimization reports to Plaintiff. (ECF No. 67 at 13.) In response, Plaintiff contends it was entitled to quarterly optimization reports under the plain meaning of the contractual language. (ECF No. 70 at 12.)

Under California law, courts must interpret contracts "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *see also ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1212 (9th Cir. 2015). "It is not the parties' subjective intent that matters, but rather their 'objective intent, as evidenced by the words of the contract.'" *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)). A court interprets words in a contract in their ordinary and popular sense unless used by the parties in a technical sense or given special meaning. Cal. Civ. Code § 1644; *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014) (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)). Additionally, a court interprets contract language in context of the whole contract. *Dep't of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, 29 Cal. App. 5th 410, 418 (2018) (citing Cal. Civ. Code § 1641).

In a dispute over the meaning of contractual language, a court must determine "whether the disputed language is reasonably susceptible to the interpretation urged by the party." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1223 (9th Cir. 2008) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003)) (internal quotation marks omitted). "Under California law, interpretation of a contract is a two-step process: [f]irst the court provisionally receives . . . all credible evidence concerning the parties' intentions to determine ambiguity . . . . If in light of the extrinsic evidence the court decides the language is

reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 768 (N.D. Cal. 2010) (internal quotation marks omitted) (quoting *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004)). "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 976 (E.D. Cal. 2018) (quoting *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998)).

Here, Plaintiff's causes of action stem primarily from three separate contracts. The Court will discuss the relevant language of each contract in turn.

*i. City Contract I*

Defendant argues City Contract I did not contain an optimization report requirement and that any optimization report requirements under the CWC or the WSCA I expressly exempted local agencies like Plaintiff or only applied to Nevada, respectively. (ECF No. 67 at 14–15.) In response, Plaintiff contends that City Contract I's optimization provision required Defendant to provide Plaintiff with optimization reports. (ECF No. 70 at 7, 13–14.) Plaintiff further states Defendant was expressly required to provide optimization reports to Plaintiff when City Contract I was amended to incorporate the terms of the WSCA I. (ECF No. 70 at 14.)

At the outset, Plaintiff concedes the CWC does not expressly require Defendant to provide optimization reports because the optimization requirement only applied to state departments. (ECF No. 70 at 13.) Under the CWC, local agencies like Plaintiff were specifically exempted from the optimization report requirement. (ECF No. 68-2 at 84.) Because City Contract I incorporated the language of the CWC, (ECF No. 68-1 at 1–2), City Contract I specifically exempted Plaintiff from the CWC optimization report requirements.

The Court now turns to the optimization provision within City Contract I, which states, "Optimization: After the initial plan assignment, [Defendant] will routinely identify those users that are not in the most optimized plan and work with City Department Telephone Coordinators to place users in the most optimized plan." (ECF No. 68-1 at 5.) Defendant argues the

optimization provision does not require Defendant to provide optimization reports explicitly. (ECF No. 67 at 14.) However, the Complaint also repeatedly alleges that rate plan optimization has a specific meaning in the wireless industry and that Defendant knew of this meaning. (ECF No. 1-2 ¶¶ 6, 21, 25, 134.) More specifically, the Complaint alleges Defendant fulfilled its rate plan optimization requirements with private customers by providing optimization reports. (ECF No. 1-2 ¶ 134.)

Plaintiff is not required to prove its claims at this stage. Rather, in ruling on a 12(b)(6) motion, a court determines only whether the operative complaint contains "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's allegations must be taken as true and given the benefit of "every reasonable inference." *Retail Clerks Int'l Ass'n*, 373 U.S at 753 n.6. Although City Contract I's optimization provision did not require optimization reports on its face, Plaintiff's factual allegations support a reasonable inference that the optimization provision contained a latent ambiguity. Indeed, Plaintiff sufficiently nudged its claim "across the line from conceivable to plausible" by alleging Defendant (1) knew that such a provision held special meaning in the industry and (2) fulfilled its rate plan optimization with other customers by providing optimization reports. *Id.* at 680. Thus, the Court finds that City Contract I is at least reasonably susceptible to Plaintiff's interpretation that the optimization provision required optimization reports. *Halicki Films*, 547 F.3d at 1223.

Moreover, any ambiguity regarding Defendant's obligation to provide optimization reports dissipated once City Contract I incorporated the terms of the WSCA I. The WSCA I RFP provides a subscriber is "[a] using entity who contracts to receive and pay for wireless or walkie-talkie services." (ECF No. 68-4 at 7.) Further, the WSCA I RFP states a quarterly optimization report for each wireless service subscriber shall be submitted. (ECF No. 68-4 at 9.) Plaintiff is an entity who contracted with Defendant for wireless services, (ECF No. 1-2 ¶ 1), and thus Plaintiff is considered a subscriber. As a subscriber, a reasonable interpretation of the WSCA I requires a quarterly optimization report be submitted regarding Plaintiff.

In sum, the Court finds that based on the factual allegations in the Complaint, City

Contract I is reasonably susceptible to the interpretation that Defendant was required to provide Plaintiff with quarterly optimization reports. Therefore, the Court declines to grant Defendant's motion to dismiss based on City Contract I.

*ii.    City Contract II*

Defendant argues City Contract II, which adopted the terms of the WSCA I, did not reference optimization or optimization reports in the "Quarterly Reports" provision. (ECF No. 67 at 10–11.) Plaintiff contends the plain language and structure of the WSCA I confirms that Defendant was required to provide quarterly optimization reports to Plaintiff. (ECF No. 70 at 14.)

As stated above, City Contract I is reasonably susceptible to the interpretation that Defendant was required to provide Plaintiff with quarterly optimization reports, even more so once City Contract I incorporated the terms of the WSCA I. Because City Contract II similarly incorporated the terms of the WSCA I, City Contract II is also reasonably susceptible to the same interpretation. The Court thus declines to grant Defendant's motion to dismiss based on City Contract II.

*iii.    City Contract III*

Defendant argues City Contract III did not require Defendant to provide quarterly optimization reports to Plaintiff. (ECF No. 67 at 16.) Plaintiff asserts City Contract III required Defendant to provide Plaintiff with optimization reports upon request, but reports provided by Defendant lacked the required optimization content. (ECF No. 70 at 18–19.) Defendant responds that Plaintiff has not specifically alleged an occasion where a report was requested and not provided. (ECF No. 71 at 7.)

Defendant's argument is unavailing. City Contract III explicitly provided for rate optimization reports upon request. (ECF No. 68-7 at 4.) Plaintiff alleges that although Defendant provided reports, the reports Defendant provided were insufficient because they did not analyze the cost of service under all available rate plans and identify the lowest cost alternative plan. (ECF No. 1-2 ¶ 119.) Plaintiff need not allege a specific occasion when a requested report was not provided because the thrust of Plaintiff's claim is that the reports—though provided—were

deficient. *See Twombly*, 550 U.S. at 570 (holding the plaintiff is not required to allege "'specific facts' beyond those necessary to state his claim"). Accordingly, Defendant's contention City Contract III did not require optimization reports is not grounds to dismiss Plaintiff's claims.

In sum, Plaintiff's allegations regarding Defendant's obligation to provide optimization reports under City Contracts I, II, and III are sufficient to survive Defendant's motion to dismiss.

B. CFCA Requires Objective Falsity

Defendant asserts Plaintiff's first and second causes of action should be dismissed for lacking objective falsity, as required by the CFCA. (ECF No. 67 at 17.) Plaintiff responds its allegations demonstrate objective falsity because the violated contractual terms are not vague, imprecise, or subjective. (ECF No. 70 at 19.)

"The CFCA is intended 'to supplement governmental efforts to identify and prosecute fraudulent claims made against state and governmental entities.'" *State ex rel. McCann v. Bank of Am., N.A.*, 191 Cal. App. 4th 897, 903 (2011) (quoting *Rothschild v. Tyco Int'l. (US), Inc.*, 83 Cal. App. 4th 488, 494 (2000)). Thus, "the CFCA must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides." *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 638 (2014) (quoting *San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 446 (2010)).

Under the CFCA, any person who knowingly submits a false claim to the state or a political subdivision may be sued for damages and civil penalties. *In re Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig.*, 851 F. Supp. 2d 1190, 1195 (N.D. Cal. 2012); *State ex rel. Harris v. PricewaterhouseCoopers, LLP*, 39 Cal. 4th 1220, 1223 (2006) (citing Cal Gov't Code § 12650 et seq.). "The statement or conduct alleged must represent an objective falsehood." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *see also United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011).[3]

---

[3] "The CFCA was modeled on the FCA, and state courts turn to federal FCA case law for guidance in interpreting the CFCA." *United States v. Somnia, Inc.*, 339 F. Supp. 3d 947, 954 (E.D. Cal. 2018) (citing *Mao's Kitchen v. Mundy*, 209 Cal. App. 4th 132, 146 (2012)); *see also Fassberg Constr. Co. v. Hous. Auth. of City of Los*

11

Here, the Complaint repeatedly references how rate plan optimization has a specific meaning in the wireless industry and that Defendant knew of this meaning. (ECF No. 1-2 ¶¶ 6, 21, 25, 134.) More specifically, the Complaint alleges Defendant fulfilled its rate plan optimization requirements with private customers by providing optimization reports. (ECF No. 1-2 ¶ 134.) Taking Plaintiff's factual allegations as true and drawing reasonable inferences in its favor, it is plausible to conclude that Defendant's failure to fulfill its contractual obligations would constitute objective falsity. *See United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) (holding the defendant satisfied its contractual obligations and therefore the defendant did not submit any "false or fraudulent" claims).

Thus, the Court declines to dismiss the first and second causes of action based on Defendant's argument that Plaintiff's claims fail to plead objective falsity.

### C. Sufficient Particularity

Defendant argues Plaintiff's first and second causes of action should be dismissed because the Complaint lacks particularity as required by Rule 9(b). (ECF No. 67 at 19.) Plaintiff responds that its allegations meet Rule 9(b)'s particularity requirements. (ECF No. 70 at 17.) Defendant challenges the particularity of Plaintiff's Complaint on three grounds: (1) Plaintiff's claim relies on a nonexistent contractual obligation; (2) Plaintiff improperly groups Carrier Defendants together without articulating each Defendant's individual liability; and (3) Plaintiff's allegations lack plausibility because they are contradictory. (ECF No. 67 at 19–21.) The Court will address each of Defendant's arguments in turn.

#### i. *Particularity of Optimization Reports Allegations*

Defendant first argues Plaintiff cannot plead fraud with particularity because Plaintiff points to a contractual obligation that did not exist: the obligation to provide quarterly optimization reports. (ECF No. 67 at 19–20; ECF No. 71 at 9.) In response, Plaintiff claims this obligation did exist and thus Defendant's argument has no bearing on particularity requirement. (ECF No. 70 at 22.)

"Claims under the False Claims Act are . . . subject to Rule 9(b). *United States ex rel.*

*Angeles*, 152 Cal. App. 4th 720, 735 (2007).

*Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). A False Claims Act claim "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (alteration in original) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Defendant fails to demonstrate Plaintiff's CFCA claims should be dismissed for lack of sufficient particularity. As stated, the Court has determined City Contracts I, II, and III are reasonably susceptible to the interpretation that Defendant was required to provide Plaintiff with quarterly optimization reports. As such, Defendant's argument that the Complaint lacks particularity because it involves a nonexistent contractual obligation is not grounds to dismiss the first and second causes of action.

### ii. Collective Allegations

Defendant next contends Plaintiff impermissibly groups Carrier Defendants together and fails to articulate how Defendant failed to comply with the contractual provisions. (ECF No. 67 at 20; ECF No. 71 at 10.) In response, Plaintiff argues separating out the collective and identical allegations against Carrier Defendants would serve no practical purpose. (ECF No. 70 at 22–23.)

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . ." *Swoben*, 848 F.3d at 1184 (internal quotation marks omitted) (quoting *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011)). However, "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Silingo*, 904 F.3d at 677 (internal quotation marks omitted) (quoting *Swoben*, 848 F.3d at 1184).

Plaintiff's Complaint alleges each of Carrier Defendants perpetrated its own independent fraud. (ECF No. 1-2 ¶¶ 1, 4–6.) Thus, Plaintiff's use of collective allegations is permissible under Rule 9(b) because each Carrier Defendant is alleged to have engaged in precisely the same

conduct. Accordingly, the Complaint's collective allegations are not grounds to dismiss Plaintiff's first and second causes of action.

### iii. *Contradictory Allegations*

Defendant argues that Plaintiff's allegations lack plausibility because they are contradictory. (ECF No. 67 at 21.) Specifically, Defendant contends Plaintiff's allegation that Carrier Defendants sporadically prepared reports related to rate plan selections directly contradicts Plaintiff's allegation that Defendant did not "work with" Plaintiff. (ECF No. 67 at 21.) Plaintiff argues that its allegations are not contradictory. (ECF No. 70 at 23–24.)

The allegations identified by Defendant are not contradictory because they are made compatible through explanation in the Complaint. Plaintiff alleges Carrier Defendants promised to prepare quarterly optimization reports, but Carrier Defendants failed to produce these reports and Plaintiff did not receive them. (ECF No. 1-2 ¶ 98.) Thereafter, Plaintiff admits Carrier Defendants sporadically prepared reports related to rate plan selections. (ECF No. 1-2 ¶ 98.) However, the Complaint explains the sporadically prepared reports lacked the substance and frequency to be considered optimization reports. (ECF No. 1-2 ¶ 98.) Because the reports Defendant provided did not allegedly satisfy the contractual requirements, it is not contradictory for Plaintiff to allege Defendant failed to "work with" Plaintiff as required by City Contracts I, II, and III. Therefore, Defendant's argument that the Complaint contains contradictory allegations is not grounds to dismiss the first and second causes of action.

### D. Unjust Enrichment

Defendant asserts Plaintiff's unjust enrichment cause of action must be dismissed because it is based on Defendant's alleged breach of contract and therefore duplicative. (ECF No. 67 at 22.) Plaintiff argues it pleaded unjust enrichment in the alternative if the Court determines there is not an enforceable agreement in the present matter. (ECF No. 70 at 24.) In reply, Defendant argues Plaintiff cannot plead unjust enrichment because it did not plead the absence of an enforceable agreement. (ECF No. 71 at 10.)

A court may construe an unjust enrichment claim for relief as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). "But a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'" *Copart, Inc.*, 339 F. Supp. 3d at 983 (alteration in original) (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012)). Further, to allege a quasi-contract claim, a party "must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." *Copart, Inc.*, 339 F. Supp. 3d at 984; *see also Damian v. A-Mark Precious Metals, Inc.*, No. CV 16-7198 FMO (SSx), 2017 WL 6940515, at *7 (C.D. Cal. Aug. 28, 2017) (dismissing unjust enrichment claim with leave to amend because the plaintiff did not allege his contracts with the defendant were void).

Plaintiff expressly alleged the existence of enforceable wireless services contracts with Defendant. (ECF No. 1-2 ¶¶ 157–162.) Plaintiff did not allege in the alternative that the contracts were unenforceable or invalid. (*See* ECF No. 1-2 ¶¶ 163–166.) Therefore, Plaintiff is precluded from asserting its unjust enrichment claim concerning the wireless services. *See Copart*, 339 F. Supp. 3d at 984. Accordingly, Plaintiff's unjust enrichment cause of action is dismissed with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiff's Consolidated Complaint. (ECF No. 67.) The Court orders as follows:

1. Defendant's Motion to Dismiss as to Plaintiff's first through fourth causes of action is DENIED; and

2. Defendant's Motion to Dismiss Plaintiff's fifth cause of action for unjust enrichment is GRANTED with leave to amend.

IT IS SO ORDERED.

Dated: October 28, 2019

Troy L. Nunley
United States District Judge